FILED
JEANNE A. NAUGHTON, CLERK

JAN 24 2019

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____
_____DEPUTY

Robert W. Knaak
413 Pine Avenue
Egg Harbor Township, NJ, 08234

# UNITED STATES BANKRUPTCY COURT
## OF THE DISTRICT OF NEW JERSEY
### Camden Division

-----------------------------------------------------------------x

In Re:                                          Case No. **18-24064**

    Robert W. Knaak                         Chapter **13**

               Debtor        Judge: ABA

-----------------------------------------------------------x

Robert W. Knaak

           Plaintiff         Adversary Case No. **18-01617**

Vs.

Wells Fargo Bank, N.A.

           Defendant

----------------------------------------------------------x


# RESPONSE AND OBJECTIONS OF WELLS FARGO BANK, NATIONAL ASSOCIATION'S NOTICE OF MOTION TO DISMISS THIS OR SECOND COMPLAINT


Plaintiff states the following to be true:

1. Defendant intends to make believe the Court in the Notice of Motion, that Plaintiff failure was to state a claim pursuant to BR 7012 in which relief can be granted. This statement is

subjective, and the statement is contradicting with their Memorandum first part, in which
is acknowledged the claim the Plaintiff has.

2. Further, the first Complaint, which is on Appeal with Reinstatement requested does only
partially attack the Bankruptcy Court's proof of claims document used by alleged Secured
Creditor and a partial legal standing for alleged Creditor to file any pleadings or
objections. The Order and Memorandum does not cover the 2nd Complaint in which the
Plaintiff as the Defendant's attorney correctly understand the cause of action. In addition,
the Honorable US Bankruptcy Judge in his Memorandum stated clearly that "the court
reserves the right to further supplement its findings of fact and conclusions of law." It
shows the Court's awareness of other facts mentioned in the 2nd complaint and indicated
at the hearing.

3. In this complaint exist the issue and possibility, that the Promissory Note is defective from
the begin it was signed and executed and which is having a wrong and uncertain
"Maturity Date". The uncertainty was created by the original bank in various supporting
documents, which are contradicting the Maturity Date. Firstly, the Amortization End Date
was in December 1, 2012. An original copy of the Promissory Note shows December 18,
2014 instead of 2017, the Note states clearly "Borrower promises to pay to the order of
Bank, in lawful money" and above, the Promissory Note states "Wachovia Bank, National
Association Summit, New Jersey, 07901 (Hereinafter referred as to "Bank")". The first
term fails to mention "Successors, Assignees". This Promissory Note covers only the
Borrowers Payment to Wachovia Bank, N.A. not its successors and/or assignees and
therefore creates an uncertainty. Moreover, the Promissory Note clearly states that the
"Swap Agreement", which gives an additional uncertainty of the Maturity Date as well as
the issue of USURY regarding interest above the maximum should be deposited to the
principal balance of the account instead to be returned to the borrower.

4. Plaintiff herein as a Guarantor and signer/executor of the Promissory Note received at the
Closing an unsigned copy of the Promissory Note on December 18, 2007. Plaintiff had a
Counsel aside by the signing of those defective invalid contracts, which no one at the
table (title company etc.) at the closing found those defects.

5. Additionally, as a Guarantor with other Guarantors the Promissory Note and Guaranty Agreement grants me freely Joint Several Liability, in which each Guarantor choose with other Guarantors freely their Liabilities and/or percentage of each Liabilities. The Guarantors are only responsible for a Debt which is in default, the Loan was given based on a 20-year Mortgage and must be paid within 120 months. The mortgage payments were made on a loan for 240 months or 20-year Mortgage. Plaintiff is being defrauded with fraudulent, false, under false pretenses signing an invalid ab initio contract (Promissory Note) {case law see Manafort, Cohen cases} with the condition that the loan must be repaid (Wells Fargo Bank, N.A. claimed in December 2012 that the Loans Maturity Date passed and the full sum of the principal balance is due) at the Maturity Date on December 18, 2017. Wells Fargo Bank, N.A. altered the 2nd page of the Promissory Note by changing the year 2014 to 2017 without the consent of the signers/executors. It is also noted, that the Borrower could impossibly charge Renters $ 6000 to $ 8000 to cover the not applied and concealed by the bank's monthly mortgage payments, in which Borrower paid approximately $ 5000 payment for each month for 120 months. The contracts are not reasonable, they are fraudulent to prevent Borrowers from being able to own an Investment Property. It is "Slavery", what Wells Fargo Bank, N.A. is doing to Individuals, which are trying to create a Commercial Investment Property.

6. Plaintiff as a Guarantor for a Loan believed at the closing and to the begin at the last year, that the contracts were truthful and correct, but they were predatory and fraudulent and therefore criminal. Its unjust that banks and its officers under the corporate disguise can avoid criminal and civil liability for their fraudulent contracts they created.

7. The Guaranty Agreement is only valid if the Promissory Note's Maturity Date does not have any "Uncertainties". Here we have many uncertainties as explained in the University of Pennsylvania Law Review, in which are named uncertainties in which courts can establish when a Note becomes invalid and void because of uncertainties.

See full review with case law

# University of Pennsylvania Law Review

### And American Law Register

**FOUNDED 1852**

Published Monthly, November to June, by the University of Pennsylvania Law School,
at 34th and Chestnut Streets, Philadelphia, Pa.

| VOL. 77 | JANUARY, 1929 | No. 3 |
|---|---|---|

## TIME CERTAINTY IN NEGOTIABLE PAPER

### RALPH W. AIGLER

There is much unfortunate confusion and uncertainty in the cases dealing with the various formal requisites of negotiable paper. With reference to none of these requisites is the status of the case law more unsatisfactory than it is in regard to the element of certainty of time of maturity. Before the attempt at uniformity by means of the *Uniform Negotiable Instruments Law* the confusion was pronounced, and this situation must have been familiar to those who framed that act. That being true, one cannot but wonder why the language of the *N. I. L.*[1] was not

---

[1] The applicable provisions of the N. I. L. are as follows:

"Section 1. . . . An instrument to be negotiable must conform to the following requirements:—. . .

"(3) Must be payable on demand, or at a fixed or determinable future time . . ."

"Section 4. An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable,

"(1) At a fixed period after date or sight; or

"(2) On or before a fixed or determinable future time specified therein; or

"(3) On or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

"Section 7. An instrument is payable on demand—

"(1) Where it is expressed to be payable on demand, or at sight, or on presentation; or

"(2) In which no time for payment is expressed.

"Where an instrument is issued, accepted, or indorsed when overdue, it is, as regards the person so issuing, accepting, or indorsing it, payable on demand."

(313)

314    *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

made sufficiently explicit to remove the difficulties and attain at least a measure of uniformity. The problems seem sufficiently important to warrant an examination of the various types of situations.

The requirement of certainty as to time for payment is dictated by much the same practical business considerations that underlie the requisite of freedom from conditions. The worth of the instrument in terms of money should be capable of determination by inspection, aside from that feature which inevitably cannot be disclosed on the face of the paper—the financial status and responsibility of the parties. A promise or order, however clearly expressed, to pay a stated sum at a time that may never come, or at a time which cannot with reasonable business [2] certainty be determined from the terms of the paper, is necessarily hopelessly uncertain as to its equivalent in money, if, indeed, it can be said to be worth anything.[3] In this respect some instruments may offend both requirements as to freedom from conditions and certainty of time. For example, a promise to pay "when *X* shall marry" may be said to be not only completely uncertain as to time of maturity but also to be conditioned upon the marriage of *X*. On either ground an instrument with such a promise could not be negotiable.[4]

By Section 1-3 it is declared in general terms that an instrument to be negotiable "must be payable on demand, or at a fixed or determinable future time." Of these three alternatives two were deemed necessary of further statutory definition: "de-

[2] "Business" certainty is a much different thing from mathematical or computable certainty. An instrument payable "at sight" or "on demand" is a good example. In a practical business sense such paper is unobjectionable so far as indefiniteness of time for payment is concerned, although obviously the date when payment is to be made cannot be pointed to with any degree of certainty.

[3] There are, of course, other reasons contributing to the requirement of certainty of time of maturity; for example, the necessity of determining whether one is taking overdue paper, the need of making presentment and giving notice of dishonor at the right time, etc. See Chafee, *Acceleration Provisions in Time Paper* (1919) 32 HARV. L. REV. 747, 753-754.

[4] The time the creditor must wait for his money determines largely the amount of discount or premium the paper carries; hence, independently of the contingency element as to whether the money will ever be payable, there is the necessity for a fixed or determinable date of maturity. As to the conditional element, see the writer's *Conditions in Bills and Notes* (1928) 26 MICH. L. REV. 471.

mand" paper is treated in Section 7; paper payable at a "determinable future time" is considered in Section 4. The meaning of "fixed" future time was evidently thought to need no further elucidation.

## FIXED FUTURE TIME

There is no particular form of expression in which the "fixed" future time must be stated. For example, an order: "$250.00. August 14, 1901, Mr. Wm. Tebo will please pay to R. J. Torpey or order two hundred and fifty dollars and charge to my account. Due Oct. 1. John Ryan," was held to be a good bill of exchange, being payable at a fixed future time.[5]

Questions inevitably will arise as to whether the fixed future time has been stated with sufficient definiteness. It will be noted that in the case just cited the bill though dated "August 14, 1901" was declared to be due on October first, not mentioning the year. That the next succeeding first of October was meant would seem clear, and the court so read the document. But in a recent Washington case[6] a trade acceptance dated August 1, 1919, and delivered on or about that date was deemed to be incomplete or irregular because the only attempt to fix the due date was: "On December 1, pay to the order of G. W. Laing." Accordingly it was concluded that the plaintiff was not a holder in due course, the instrument he bought not being "complete and regular" as required by Section 50-1. To any but a legally trained mind the date of maturity would not have caused a moment's hesitation,[7]

---

[5] Torpey v. Tebo, 184 Mass. 307, 68 N. E. 223 (1903). The court said, at 308, 68 N. E. at 224, that the words, "due Oct. 1," meant that the $250 in question was to be due October 1, "that is to say, is to be paid October 1."

[6] United Ry. & Logging Supply Co. v. Siberian Commercial Co., 117 Wash. 347, 201 Pac. 21 (1921), 19 A. L. R. 506 (1922).

[7] Some reliance was placed upon *In re* Estate of Philpott, 169 Iowa 555, 151 N. W. 825 (1915), Ann. Cas. 1917B 839, in which, however, the note in question was payable "on or before four . . . after date," which presented an entirely different situation.

In Collins v. Trotter, 81 Mo. 275 (1883), a note dated June 29, 1878, was made payable on the "first day of March," and the court held it to be payable on demand. And in Washington County Bank v. Jerome, 8 Mich. 490 (1860), a note which bore date "July 20, 1855," read as follows: "One year, August 15th, after date, we promise to pay . . . " It was held that the note was due on August 15th, 1856.

but because in the court's judgment it could not be said what December first was meant, the maturity date was uncertain and the instrument was not complete and regular.[8]

### AGREEMENTS FOR EXTENSION

Contracts for the extension of the time of payment may present questions as to the certainty of maturity required for negotiability. More commonly, however, the problem raised has to do with the effect upon the parties secondarily liable or the effectiveness of the agreement as between the parties, and these matters will be considered in other connections. An agreement for extension, however clearly binding it may be, made outside the instrument, either before or after maturity, cannot, it seems, have any possible effect upon the negotiability of the paper. That must be determined from the language in the written instrument.

In a leading case [9] it was held that an instrument was not a negotiable note because it contained a provision that: "The makers and indorsers of this obligation further expressly agree that the payee, or his assigns, may extend the time of payment thereof from time to time indefinitely as he or they may see fit." In view of the fact that the maker, the payee, and the first indorser were the same person it is perhaps not surprising that the court concluded that: "By the terms of the condition of the note in suit it would never fall due, but could be indefinitely extended." The chances are, however, that the quoted provision was in a printed form and not at all intended to have the effect attributed to it. In a later case in the same state [10] a stipulation that: "Sureties hereby consent that time of payment may be extended from time to time without notice thereof" was held not to prejudice nego-

---

[8] As pointed out in the note in (1922) 22 Col. L. Rev. 159, the objection to the bill, whatever there was, should not have been put on the ground that there was any incompleteness or irregularity, but rather that it was not a good bill because of lack of the requisite certainty as to time of maturity. If the meaning of the language was clear, as it is submitted it was, then there was no incompleteness or irregularity; if, on the other hand, any first of December might have been the fair meaning, then the instrument was lacking in a fundamental requisite of a good bill, and hence non-negotiable.

[9] Woodbury v. Roberts, 59 Iowa 348, 13 N. W. 312 (1882).

[10] Farmer v. Bank of Graettinger, 130 Iowa 469, 107 N. W. 170 (1906).

tiability.[11]   Under these decisions the controlling question is
whether the extension provision amounts to an agreement pres-
ently to extend for an unstated and undeterminable time, or an
agreement in advance by either the principal debtor or the holder
to consent to such indefinite extension if proposed by the other,
or, on the other hand, in effect a mere waiver by parties sec-
ondarily liable of defenses upon which they might otherwise
rely if a binding extension were agreed upon by the principal
parties.[12]

The line of distinction just stated seems entirely sound,
the only real difficulty being that of determination of the fair
meaning of the language in the extension provision.   Surely an
agreement by the holder that the maker may at his option post-
pone the time of payment for an indefinite or unstated period
renders the time for payment hopelessly uncertain; an agreement
by the maker that the payee should have such privilege also leaves
the ultimate date for payment uncertain.[13]

A provision that sureties or indorsers agree to be liable
without notice despite an extension of time clearly should not be
interpreted as affecting the time of maturity.[14]   Agreements or con-

---

[11] The court, after observing that if an instrument provides in terms for
extension of time of payment indefinitely it is non-negotiable because of the
resulting uncertainty of time of maturity, pointed out that in the note in suit
there was an unqualified agreement on the part of the makers to pay on a cer-
tain date.   The clause in question was accordingly held to be merely an agree-
ment by the sureties, if there were any, that they would not claim a release if,
forsooth, an extension should be granted the makers without notice to the
sureties.

[12] Cedar Rapids Nat. Bank v. Weber, 180 Iowa 966, 164 N. W. 233 (1917),
L. R. A. 1918A 432 (in which, "All parties to this note, including sureties,
endorsers and guarantors" consented in advance to extensions of time) ; Quinn
v. Bane, 182 Iowa 843, 164 N. W. 788 (1918) ; Farmers' Nat. Bank v. Stanton,
191 Iowa 433, 182 N. W. 647 (1921) ; Security Sav. Bank v. Capp, 193 Iowa
278, 186 N. W. 927 (1922).

[13] Here, however, some argument might be made that the instrument is in
effect payable at a definite time or thereafter on demand, thus possibly saving
the negotiability of the document.   City Nat. Bank v. Goodloe-McClelland Com.
Co., 93 Mo. App. 123 (1902) ; Capron v. Capron, 44 Vt. 410 (1872).

[14] Wolfboro L. & B. Co. v. Rollins, 195 Mass. 323, 81 N. E. 204 (1907) ;
American Bank & T. Co. v. Ragsdale, 74 Ind. App. 367, 129 N. E. 59 (1920)
(distinguishing situations in which the language is to the effect that payment
may be extended by the payee or any subsequent holder of the note) ; Wittey v.
Mich. Mutual Life Ins. Co., 123 Ind. 411, 24 N. E. 141 (1890) ; Farmer v.
Bank of Graettinger, *supra* note 10; Smith v. Nelson Land & Cattle Co., 212
Fed. 56 (C. C. A. 8th, 1914) ; McDonald v. Mulkey, 32 Wyo. 144, 231 Pac.
662 (1924).

318    *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

sents to extensions to which principal debtors are in terms parties, thus possibly to be distinguished from those just mentioned, will of course vary in phraseology. Usually they are tied up with waivers of presentment, demand, notice and protest.[15] In this form, and further in view of the fact that almost always the language is found in a printed form of note, it seems a distorted construction that the time of payment, otherwise sufficiently definite, is thereby rendered uncertain.[16] While there is respectable authority that an instrument with such provision is indefinite as to maturity, hence non-negotiable,[17] by far the larger number of cases, and, it is believed, much the better opinion is that there is no effect upon maturity.[18] Under this preferable view there is no extension of time unless later agreed to by the parties competent to make such contract, and the force of the extension provision, as indicated by its position in connection with the waiver

[15] In a recent case the language in question was: "the makers, indorsers, and guarantors of this note, and the sureties hereon, severally waive presentment for payment, protest and notice of dishonor, and consent that the time of its payment may be extended without notice, all defenses on the ground of any extension of time of payment being hereby expressly waived." Security Nat. Bank v. Gunderson, 216 N. W. 595 (S. D. 1927).

[16] Another instance of troubles arising out of the use of a printed form not adapted to the intended use is McReynolds v. Mortgage & Acceptance Corp., 13 F. (2d) 313 (Ct. of App. D. C. 1926). Here, however, the difficulty had nothing to do with waivers.

[17] Sanderson v. Clark, 33 Idaho 359, 194 Pac. 472 (1920); Cedar Rapids Nat. Bank v. Weber, 180 Iowa 966, 164 N. W. 233 (1917); Security Sav. Bank v. Capp, 193 Iowa 278, 186 N. W. 927 (1922); Rossville State Bank v. Heslet, 84 Kan. 315, 113 Pac. 1052, 33 L. R. A. (N. S.) 738 (1911); Central Nat. Bank v. Engler, 112 Kan. 708, 212 Pac. 656 (1923); see Notes (1918) 3 CORN. L. Q. 125; (1918) 4 IOWA L. BULL. 123.

[18] Anaheim Nat. Bank v. Dolph, 255 Pac. 184 (Cal. 1927); Longmont Nat. Bank v. Loukonen, 53 Colo. 489, 127 Pac. 947 (1912), Ann. Cas. 1914B 208; Bonart v. Rabito, 141 La. 970, 76 So. 166 (1917); City Nat. Bank v. Goodloe-McClelland Com. Co., *supra* note 13; Russell v. Wyant, 214 Mo. App. 377, 253 S. W. 790 (1923); First Nat. Bank of Sidney v. Baldwin, 100 Neb. 25, 158 N. W. 371 (1916); First Nat. Bank v. Stover, 21 N. M. 453, 155 Pac. 905 (1915), Ann. Cas. 1918B 145, L. R. A. 1916D 1280; First Nat. Bank v. Buttery, 17 N. D. 326, 116 N. W. 341, 16 L. R. A. (N. S.) 878 (1908); City Nat. Bank v. Kelly, 51 Okla. 445, 151 Pac. 1172 (1915); Security Nat. Bank v. Gunderson, 216 N. W. 595 (S. D. 1927); National Bank of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 368 (1904); McCornick v. Nielson, 64 Utah 605, 233 Pac. 122 (1925); Note (1923) 21 MICH. L. REV. 927.
In Anaheim Nat. Bank v. Dolph, *supra*, at 187, the court said: "The appellant concedes that the interpretation we place upon the language of the note in question is in harmony with the modern doctrine on the subject, but insists that the older cases are in a majority and better reasoned. The trend of modern authority is unquestionably opposed to the appellant's construction of the note. We are satisfied with the reasoning in these later cases."

of steps the omission of which would otherwise give a defense, is merely to prevent those whose agreement it is from seeking to escape liability because of the extension. If it be said that then there is no need for including "makers" and others liable as principal debtors, the answer seems effective that they are included in terms out of an abundance of caution in preparation of the form note, not infrequently a party who really is merely a surety appearing on the instrument to be a maker. Occasionally the language is in terms an authorization to or agreement with the payee or other holder that he may extend the time for payment. This would seem to be merely another way of expressing the same idea, and the decisions are also in conflict here.[19] If it is provided that no extension shall operate to release the signers from liability, that would seem to be an even clearer case that the time of payment is not rendered uncertain. This difference in expression, however, has not been considered sufficient reason for departing from the rule announced in cases involving the more common provision.[20]

An agreement for extension for a definite time is unobjectionable to negotiability, even though it be looked upon as binding between the principal debtor and the holder, and not merely as a foreclosure of possible defenses by those who might otherwise be released from liability by an extension. Emphasis here is placed upon the fact that there is a definite, ultimate date beyond which, according to the terms of the instrument, payment cannot be delayed.[21]

[19] For cases holding that negotiability is not impaired see Stitzel v. Miller, 250 Ill. 72, 95 N. E. 53, 34 L. R. A. (N. S.) 1004 (1911); Bank of Whitehouse v. White, 136 Tenn. 634, 191 S. W. 332 (1917). *Contra:* Rosenthal v. Rainbo, 165 Ind. 584, 76 N. E. 404 (1905); Farmers' Nat. Bank v. Stanton, *supra* note 12; Smith v. Van Blarcom, 45 Mich. 371, 8 N. W. 90 (1881); Coffin v. Spencer, 39 Fed. 262 (C. C. Ind. 1889). In the Illinois case emphasis was placed on the fact that the time might be extended only after maturity. See also Navajo County Bank v. Dolson, 163 Cal. 485, 126 Pac. 153 (1912).

[20] Smith v. Zabel, 157 N. E. 551 (Ind. App. 1927), discussed in (1928) 26 MICH. L. REV. 568.

[21] Anniston Loan & Trust Co. v. Stickney, 108 Ala. 146, 19 So. 63, 31 L. R. A. 234 (1896); State Bank v. Bilstad, 162 Iowa 433, 136 N. W. 204 (1912). In both of these cases, although the extended period was definitely stated, there was an uncertainty as to whether there ever would be an extension. In the first case the extension for six months was optional with the makers and indorsers; in the second it was dependent upon a designated tract of land not producing a crop of a stated quantity. Perhaps the decisions may rest upon the view that

320    *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

### "AT A FIXED PERIOD AFTER DATE OR SIGHT"

Much that has been said above is applicable here. Evidently this language was put into the statute to make clear that an instrument may be negotiable although the maturity date necessitates computation. A note dated March 1, 1928, and expressed to be payable "four months after date" is as acceptable as one in which the maturity date is stated to be "July 1, 1928." The computation may be more complicated. For example, a promise to pay $500 in equal monthly installments of $100 each certainly provides for payment at a fixed period after date. So also an agreement to pay £170 with interest at a stated rate, "The first payment, to wit, £40 or more to be made on the 1st Feb. 1873, and £5 on the first day of each month following until this note and interest shall be fully satisfied." [22]

By Section 6-1 it is provided that the validity and negotiable character of an instrument are not affected by the fact that it is not dated. Section 13 further declares that: "Where an instrument expressed to be payable at a fixed period after date is issued undated . . . any holder may insert therein the true date of issue . . ." These provisions seem to make it clear that an undated note, for example, payable sixty days after date, should be, so far as the time element is concerned, deemed negotiable.

As to bills payable a certain time "after sight" it should be observed that maturity is determined by taking as the start of the stated period the date of acceptance or dishonor by refusal to accept.[23] Private exhibition of the bill to the drawee does not start the period—"the sight," says Marius,[24] "must appear in a

---

there were ultimate, fixed dates of maturity—the ends of the extension periods—with provisions for accelerated maturity on the happening or non-happening of certain contingencies. See *infra* p. 322.

If the agreement is for a renewal without stating the time during which the renewed instrument is to run, the time of payment is indefinite. Citizens Nat. Bank v. Piollet, 126 Pa. 194, 17 Atl. 603 (1889) ; *cf.* cases cited *supra* note 12. In New Mexico an extension of time "until frost" was deemed to be for a definite time. West Texas Loan Co. v. Montgomery, 27 N. M. 296, 200 Pac. 681 (1921). But the court was not passing upon the negotiability of the note.

[22] Cooke v. Horn, 29 L. T. N. S. 369 (1873). The case also presents the problem of instruments payable at a determinable date or earlier at the option of the maker. As to this point see *infra*, this section.

[23] Campbell v. French, 6 T. R. 200 (1795) ; Mitchell v. Degrand, Fed. Cas. No. 9,661 (C. C. Mass. 1817) ; BYLES, BILLS (18th ed. 1923) 78.

[24] BILLS OF EXCHANGE (2d ed. 1790) 41.

*TIME CERTAINTY IN NEGOTIABLE PAPER*      321

legal way, which is approved either by the parties underwriting the bill, accepting thereof, or by protest made for non-acceptance." Statutory confirmation of this early "advice" seems to appear in Section 143-1.

## "On or Before" Paper

It is suprising that in subdivision 2 which is one of three supposedly elucidating the meaning of "a determinable future time," it should be declared in effect that an instrument is payable at a determinable future time if it is payable on or before a determinable future time. In other words, the definitive statement makes use of the very expression being defined.

Whatever may be the scope of the second subdivision, at least it makes clear that the common promise to pay on or before a date stated, or on or before a fixed period after date, is unobjectionable to negotiability. Thus the view that was infrequently entertained before the statute that such promises were not definite in point of time,[25] has been repudiated.[26]

---

[25] Hubbard v. Mosely, 77 Mass. 170 (1858); Way v. Smith, 111 Mass. 523 (1873); Stults v. Silva, 119 Mass. 137 (1875); Richards v. Barlow, 140 Mass. 218, 6 N. E. 68 (1885); see Chouteau v. Allen, 70 Mo. 290, 339 (1879). But *cf.* First Nat. Bank v. Skeen, 101 Mo. 683, 14 S. W. 732 (1890); Fogg. v. School Dist., 75 Mo. App. 159 (1898). The notion in Massachusetts that an "on or before" promise was fatal to a negotiable note, indeed to any promissory note, negotiable or not, seems to begin with the case first cited. It was not noticed that the instrument there in question was deemed not a negotiable note largely, if not entirely, because of a provision, in form a condition, that the note was to be given up to the maker "as soon as" the face amount thereof was received by the payee. Bigelow, J., pointed out, at 172, that the holder could not count upon his right to receive the money at all events, for a payment even before maturity to the payee would have been a good discharge of the contract, "although it had then been passed over to a third person, if the promisor had no notice of such transfer."

In Lowell Trust Co. v. Pratt, 183 Mass. 379, 67 N. E. 363 (1903), a note payable five years from date was held negotiable despite added language giving the makers the privilege of paying the whole or any portion of the principal sum "at any time within said five years if they so desire." This result was due to a statute, Mass. Laws 1888, c. 329, declaring that: "No written promise to pay money shall be held not to be a promissory note, or not to be negotiable for the reason that the time of payment is uncertain, provided that the money is payable at all events and at some time that must certainly come." Strangely, this statute and the last cited case escaped the court's attention in Pierce v. Talbot, 213 Mass. 330, 100 N. E. 553 (1913), reliance being placed upon Stults v. Silva, *supra*, in holding non-negotiable an instrument that permitted payment by anticipation at any time.

[26] Road Imp. Dist. v. Bank of Commerce, 169 Ark. 43, 272 S. W. 834 (1925). In Utah State Nat. Bank v. Smith, 180 Cal. 1, 179 Pac. 160 (1919), the court

322    *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

### ACCELERATED MATURITY

When an instrument contains a fixed or determinable future time of maturity, the variety of provisions that may be incorporated therein maturing the paper earlier is wide indeed. Such provisions, however, may be classified along at least two lines which cross: (a) according to the relationship of the accelerating event to the instrument, and (b) according to the relationship between the event and the holder or maker. Under (a) there may be accelerating events: (1) having some bearing upon the obligation evidenced by the instrument or its collection, and (2) having no such bearing. A learned writer in the field of negotiable paper has suggested that acceleration of maturity should be possible "only by the performance of an act regularly incident to the collection of the paper." [27] . The demand in instruments payable on demand, and presentment in paper payable at or after sight, are typical of the acts "regularly incident to the collection of the paper." The cases decided under the *N. I. L.*, however, fall far short of being classifiable according to this test. There are many cases denying negotiability because of the acceleration provision, although it involved an act incidental to collection, and not a few decisions upholding negotiability although the accelerating event did not involve such an act. But there is no test according to which a line may be drawn differentiating the holdings. The uncertainty in the law is pronounced and disconcerting. Brief

---

was of opinion that § 4-2 of the N. I. L. covered not only those promises in terms payable "on or before" but many other types. In Union State Bank v. Benson, 38 N. D. 396, 165 N. W. 509 (1917), a note payable "on or before Sept. 2, 1910," was held negotiable, most of the discussion in the case, however, being devoted to the effect which marginal notations that certain partial payments would be made at certain dates had upon the note being deemed dishonored after those dates had passed without the payments.

A curious question arose in Delaney v. Nelson, 132 Wash. 772, 232 Pac. 292 (1925). The note involved was an "on or before" one, interest payable annually, and with the further provision that "The sum of one hundred dollars or any multiple thereof, of the principal sum of this note, may be paid at any date on which interest is payable under the terms hereof." The court was of opinion that under these terms the maker could pay all the note at any time before the due date, but could pay part of it only on interest-paying dates, providing such payments were of $100 or any multiple thereof.

[27] Chafee, *supra* note 3, at 756. This is, as Professor Chafee states, an adoption of the doctrine laid down in 2 AMES, CASES ON BILLS AND NOTES (1894) 831.

reference to several common types of documents may indicate some of the troubles.

In several cases it has been held that there was an objectionable uncertainty as to maturity because of a provision that the holder might at any time declare the entire sum due and payable if he felt himself insecure.[28]  This seems in substance the same as stating the maturity to be at a fixed date or earlier if demanded, as to which, before the *N. I. L.,* there were conflicting views.[29]

There are decisions both ways as to the negotiability of paper providing, *inter alia,* that if the collateral given as security depreciates in value the debtor shall on demand deliver additional collateral to the holder's satisfaction and in default thereof that the entire sum shall mature at once.[30]  So also in the case of the

---

[28] First Nat. Bank v. McCartan, 220 N. W. 364 (Iowa 1928) ; Old Colony Trust Co. v. Stumpel, 126 Misc. 375, 213 N. Y. Supp. 536 (1926) ; First State Bank v. Barton, 129 Okla. 67, 263 Pac. 142 (1928) ; Puget Sound State Bank v. Washington Paving Co., 94 Wash. 504, 162 Pac. 870 (1917). See also Murrell v. Exchange Bank, 168 Ark. 645, 271 S. W. 21 (1925), where the note was given for the price of a chattel, the holder to be allowed to accelerate maturity, as the court interpreted the language, whenever he deemed the property, for the price of which the note was given, to be unsafe.  This was deemed to fall within the "insecurity" cases.  In the Stumpel case, *supra,* the court says, at 379, 213 N. Y. Supp. at 539, that: "In no reported case has a clause, accelerating maturity if the holder deems himself insecure been held negotiable . . . ."
In the New York case the test proposed by Ames and Chafee as to acceleration by the performance of an act regularly incident to the paper's collection is somehow thought to lead to the conclusion announced, that the instrument was non-negotiable.  If the court had read a little further, it would have observed that in Professor Chafee's opinion these "insecurity" clauses are clearly permissible.  Chafee, *supra* note 3, at 773-776.  Reference was also made to the well-worn, picturesque though misleading, figure of Chief Justice Gibson in Overton v. Tyler, 3 Pa. 346 (1846), of a negotiable instrument being "a courier without luggage."  This suggests an entirely different ground of objection, having nothing to do with uncertainty of time, and it is to be noted that even under the more narrow test, the clause in question was not offensive luggage, its function being to aid in the collection of the debt represented by the note.  The Oklahoma court travels the same ground, quoting from the Stumpel case.
If the note is payable on demand, then there is nothing objectionable in a provision that if the holder at any time may feel himself insecure, he may apply pledged collateral upon the indebtedness.  Security Bank v. Foster, 249 S. W. 227 (Tex. Civ. App. 1923).

[29] In Mahoney v. Fitzpatrick, 133 Mass. 151 (1882), a note expressed to be payable "on demand or in three years from this date," was held to be uncertain as to time of payment.  *Contra:* Louisville Banking Co. v. Gray, 123 Ala. 251, 26 So. 205 (1899).

[30] That such notes are non-negotiable see Holliday State Bank v. Hoffman, 85 Kan. 71, 116 Pac. 239 (1911), 35 L. R. A. (N. S.) 390 (1912) ; Hibernia Bank & Trust Co. v. Dresser, 132 La. 532, 61 So. 561 (1913) (apparently overruled by Mechanics & Metals Nat. Bank v. Warner, 145 La. 1022, 83 So. 228

324    *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

common "chattel note" in which the payee-vendor frequently reserves title [31] and is authorized to sue at once and, perhaps, to seize the chattel if the buyer-maker attempts to sell it, or to remove it permanently from the state, or suffers it to be taken by a third party on legal process. The force of the cases holding such paper non-negotiable on the basis of uncertainty of time [32] has been much weakened. If the acceleration is dependent upon some act or default of the debtor, it seems to be the better opinion that there is no offensive time uncertainty,[33] the cases under this head thus being generally in accord in result with those in-

---

[1919]); Reynolds v. Vint, 73 Ore. 528, 144 Pac. 526 (1914); Greenwood v. Kirby, 24 Manitoba L. R. 532, 20 D. L. R. 725 (1914) (under Canadian Bills of Exchange Act). The better and more commonly entertained opinion, however, is to the contrary. Finley v. Smith, 165 Ky. 445, 177 S. W. 262, L. R. A. 1915F 777 (1915); Mechanics & Metals Nat. Bank v. Warner, *supra*; Empire Nat. Bank v. High Grade Oil Refining Co., 260 Pa. 255, 103 Atl. 602 (1918); West Point Banking Co. v. Gaunt, 150 Tenn. 74, 262 S. W. 38 (1924), 34 A. L. R. 862 (1925); Kennedy v. Broderick, 216 Fed. 137 (C. C. A. 7th, 1914); Kobey v. Hoffman, 229 Fed. 486 (C. C. A. 8th, 1916). In the case last cited the action was on the same notes held non-negotiable by the Kansas court in the Holliday State Bank case, *supra*. The federal court concluded that the Kansas decision was not in accordance with the law merchant, which on this point became statutory law by the N. I. L.
The force of the first group of cases is further weakened by the fact that the conclusions therein are based fully as much upon the ground that the instruments contained additional undertakings beyond the requisite simplicity of negotiable paper, as upon the ground of indefiniteness of time of maturity. The North Carolina statute provides elaborately for the negotiability of paper with provisions for acceleration upon failure to put up additional collateral, extension of time, etc. N. C. Laws 1923, c. 72. See also Wisconsin statutes.

[31] This feature as rendering the paper conditional has been considered in connection with the discussion of conditions. See Aigler, *supra* note 4, at 477.

[32] Kimpton v. Studebaker Bros. Co., 14 Idaho 552, 94 Pac. 1039 (1908); Moyer v. Hyde, 35 Idaho 161, 204 Pac. 1068 (1922), 28 A. L. R. 695 (1924); Iowa Nat. Bank v. Carter, 144 Iowa 715, 123 N. W. 237 (1909); First Nat. Bank v. Carson, 60 Mich. 432 (1886); Reynolds v. Vint, *supra* note 30; Carroll, etc., Bank v. Strother, 28 S. C. 504, 6 S. E. 313 (1888); Kimball Co. v. Mellon, 80 Wis. 133, 48 N. W. 1100 (1891); see United Bank & Tr. Co. v. McCullough, 212 N. W. 762, 764 (Neb. 1927); *cf.* Utah State Nat. Bank v. Smith, 180 Cal. 1, 179 Pac. 160 (1919).

[33] McCornick & Co. v. Gem State Oil & Products Co., 38 Idaho 470, 222 Pac. 286 (1923), 34 A. L. R. 867 (1925); Des Moines Sav. Bank v. Arthur, 163 Iowa 205, 143 N. W. 556 (1913); Bonart v. Rabito, *supra* note 18; Schmidt v. Pegg, 172 Mich. 159, 137 N. W. 524 (1912); Nickell v. Bradshaw, 94 Ore. 580, 183 Pac. 12 (1919), 11 A. L. R. 623 (1921). In the McCornick case the earlier Idaho cases, cited above, were distinguished on the ground that the notes there involved allowed the holder to accelerate maturity at his own whim, while in the present case he could exercise such option only upon the debtor's default or upon the happening of an event outside of the control of either. This point was made also in Nickell v. Bradshaw, and in Des Moines Sav. Bank v. Arthur, both *supra*.

volving acceleration whenever the holder may deem himself insecure.

Before the *N. I. L.* there was a conflict of authority as to whether a warrant of attorney to confess judgment made the instrument of which it was a part non-negotiable. The courts holding that such paper was not negotiable relied on two grounds, namely: (1) the provision was "luggage" beyond that permitted in a negotiable instrument,[34] and (2) the time of maturity was thereby made uncertain.[35] Obviously the latter ground could apply only when the confession was authorized before the instrument otherwise matured. The first of these two grounds, at least as to warrants to confess judgments if not paid *at maturity,* no longer can apply,[36] for it is now expressly provided by the statute [37] that negotiability is not affected by a provision which "authorized a confession of judgment if the instrument be not paid at maturity." [38] Since this language is found in the section purporting to cover the "luggage" situation it is open to question whether it ought to be considered to have any bearing upon the time element. This point would have to be faced if it were argued that the language quoted from the statute had changed the law in a state in which theretofore a warrant to confess judgment at any time had been deemed consistent with negotiability.[39] However it may be with instruments allowing confessions of judgment at

---

[31] This was the ground mainly relied upon in the famous case of Overton v. Tyler, *supra* note 28, in which Chief Justice Gibson gave currency to the unfortunate expression "a courier without luggage." Seipp Brewing Co. v. McKittrick, 86 Mich. 191, 48 N. W. 1086 (1891).

[35] Richards v. Barlow, 140 Mass. 218, 6 N. E. 68 (1885), in which Holmes, J., said that the case was governed by Mahoney v. Fitzpatrick, 133 Mass. 151 (1882), where the note was payable "on demand or in three years from this date."

[34] In Iowa, provisions for confession of judgment had no effect upon negotiability because they were void. Tolman v. Janson, 106 Iowa 455, 76 N. W. 732 (1898); Green v. Dick & Shope, 72 Pa. Super. 266 (1919).

[37] N. I. L. § 5-2.

[38] N. I. L. § 5-2. The Illinois version of the N. I. L. omits the words "if the instrument be not paid at maturity."

[39] In Gehlbach v. Carlinville Nat. Bank, 83 Ill. App. 129 (1898), the note in suit was held negotiable although judgment was authorized to be confessed at any time whether or not the note was then due. But the variation in the statutory language in that state, *supra* note 38, made it unnecessary for the Illinois courts to decide the question raised.

326    *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

or after maturity,[40] the disposition of the courts seems to be clearly to view paper in which judgments may be confessed prior to maturity at the election of the holder as non-negotiable.[41]

With these confession of judgment decisions in mind, it might be expected that a note or bond payable at a fixed date, but authorizing the holder, prior to maturity, to convert the instrument into stock, for example, would be held non-negotiable. Authority of the highest character, however, upholds the negotiability of such paper.[42]

It is a strange line of distinction that has been more and more definitely drawn by the courts as to the possible effect upon negotiability of acceleration provisions depending upon the location of control of the accelerating event. If the happening of the event rests with the maker,[43] whether an election there-

---

[40] Metropolitan Bank v. McNutt, 73 Colo. 291, 215 Pac. 151 (1923) ; Newhall Sav. Bank v. Buck, 197 Iowa 732, 197 N. W. 986 (1924) ; Edelen v. Bank, 139 Md. 413, 115 Atl. 599 (1921) ; McDonald v. Mulkey, 32 Wyo. 144, 231 Pac. 662 (1924).

[41] Johnson v. Phillips, 143 Md. 16, 122 Atl. 7 (1923) ; Miners' State Bank v. Auksztokalnis, 283 Pa. 18, 128 Atl. 726 (1925) ; First Nat. Bank v. Russell, 124 Tenn. 618, 139 S. W. 734 (1911) ; Wisconsin Yearly Meeting, etc. v. Babler, 115 Wis. 289, 91 N. W. 678 (1902) ; Clark v. Bank, 171 Wis. 133, 176 N. W. 906 (1920) ; Muender v. Muender, 182 Wis. 417, 196 N. W. 773 (1924). In Edelen v. Bank, *supra* note 40, confession of judgment was authorized "at any time" but "for such sum as may be due." This was held to authorize a confession only after maturity. In McDonald v. Mulkey, *supra* note 40, the same conclusion was reached on language allowing confession "for the amount due thereon . . . at any time after date hereof or after maturity." The result would be otherwise if judgment could be confessed "for such amount as may appear to be unpaid." Seipp Brewing Co. v. McKittrick, *supra* note 34. If confession is authorized "after maturity," it is not necessary to add the words "if not paid." Metropolitan Bank v. McNutt, *supra* note 40. As to the effect upon the status of the instrument of entering the authorized judgment, see Chafee, *supra* note 3, at 772, 773.

[42] Hotchkiss v. National Banks, 21 Wall. 354 (U. S. 1874) ; Hodges v. Shuler, 22 N. Y. 114 (1860) ; Welch v. Sage, 47 N. Y. 143 (1872) ; Denney v. R. R., 28 Ohio St. 108 (1875) *semble*.

[43] There are many acts or defaults on the maker's part on which maturity may be accelerated. Those stated in the trade acceptance involved in McCornick & Co. v. Gem State Oil & Products Co., *supra* note 33, were suspension of payment, giving a chattel mortgage, disposing of his business, and failing to meet at maturity any prior trade acceptance. In chattel notes maturity may be accelerated upon the maker-buyer removing the chattel from the state, or upon attachments being levied on the property, etc. By far the most common sort of hastened maturity along this line depends upon a failure by the maker to do some agreed act such as the payment of taxes, insurance, interest or an installment. These seem to be uniformly held acceptable. McCormick v. Daggett, 162 Ark. 16, 257 S. W. 358 (1924) ; Hutson v. Rankin, 36 Idaho 169, 213 Pac. 345 (1922) ; Hubbard v. Wallace Co., 201 Iowa 1143, 208 N. W. 730 (1926) ; Commerce Trust Co. v. Guarantee T. & T. Co., 113 Kan. 311, 214 Pac. 610

*TIME CERTAINTY IN NEGOTIABLE PAPER*    327

after by the holder is or is not prerequisite to maturity, there
seems now no disposition to find the provision offensive to

(1923); Farmers' B. & T. Co. v. Dent, 209 Ky. 405, 267 S. W. 202 (1924);
Star Brewing Co. v. Higgins, 248 Mass. 480, 143 N. E. 332 (1924); Durham v.
Rasco, 30 N. M. 16, 227 Pac. 599 (1924); Walter v. Kilpatrick, 191 N. C. 458,
132 S. E. 148 (1926). Indeed, as to interest and installments it is declared in
§ 2-3 that: "The sum payable is a sum certain . . . although it is to be paid
. . . by stated installments, with a provision that upon default in payment of
any installment or of interest the whole shall become due." But this has to do
with certainty of amount, not of time.
   Although there is little occasion to question the negotiability of instruments
because of the presence of provisions for maturity upon failure to pay interest
or an installment when due, there are other questions of possible difficulty aris-
ing out of such agreements that in this connection can be alluded to but briefly.
   The acceleration stipulation may be found only in another related document
such as the securing mortgage. Courts have differed as to whether in such
case the accelerated maturity permits action only on the other document, or
whether proceedings may be based upon the note or notes as well. Durham
v. Rasco, *supra*; Winne v. Lahart, 155 Minn. 307, 193 N. W. 587 (1923). Many
cases are collected and classified in Note (1925) 34 A. L. R. 848-861 and Note
(1928) 26 MICH. L. REV. 437. The view that the note is matured is based upon
the unsound doctrine that the note and mortgage, for example, being contem-
poraneously executed and relating to the same transaction, are to be construed
together, the terms of one to be read into and as part of the other. See Aigler,
*supra* note 4, at 491. If the note contains language incorporating by reference
the terms of the other document, then clearly the note may be matured for all
purposes.
   In various ways, as the running of the statute of limitations, the taking of
proper steps to fix the liability of secondary parties, the status of subsequent
purchasers of the instrument as possible holders in due course, etc., it is impor-
tant to know whether the acceleration is effected automatically by the default,
or whether there must be an election by the holder to treat the whole amount
as due. It is conceivable, though unlikely, that it may be specifically stated in
substance that upon default there shall be an automatic maturity. On the other
hand, it may be, and such is commonly the case, that the accelerated maturity is
definitely declared to be at the option of the holder. In these instances the
result seems free of doubt. The difficulty comes when there is no clear-cut
statement either way, either that the hastened maturity is automatic or that it
is optional. Largely influenced by an early Kansas decision, the opinion being
by a very distinguished Judge (Brewer), there has been considerable following
for the doctrine that this last type of acceleration agreement is as much for the
benefit of the debtor as for the creditor. In that case, National Bank v. Peck, 8
Kan. 660, 663 (1871), it was said that: "This clause is inserted in mortgages
usually for the benefit of the mortgagee; but being a valid stipulation the mort-
gagor has equal right to insist upon it, and receive whatever advantage he can
from its enforcement. When the payer at the expiration of six months failed
to pay the note then due, by the terms of the contract all three notes became
due. The statute of limitations began to run on all, and a subsequent purchaser
purchased after maturity." Examine Perkins v. Swain, 35 Idaho 485, 207 Pac.
585 (1922), 34 A. L. R. 894 (1925); Miles v. Hamilton, 106 Kan. 804, 189 Pac.
926 (1920), 19 A. L. R. 276 (1922); Cedar Rapids Nat. Bank v. Snoozy, 55
N. D. 655, 215 N. W. 96 (1927); McCray Refrigerator Co. v. Simms, 268 S. W.
275 (Tex. Civ. App. 1925); Hodge v. Wallace, 129 Wis. 84, 108 N. W. 212
(1906); Reeves v. Butcher, [1891] 2 Q. B. 509. The better opinion is that these
acceleration provisions are not self-operative. McCormick v. Daggett, *supra*;
Futthoff v. Walker, 213 Mo. App. 228, 248 S. W. 619 (1923); Walter v. Kil-
patrick, *supra*; Core v. Smith, 23 Okla. 909, 102 Pac. 114 (1909); Hartge v.
Capeloto, 136 Wash. 538, 241 Pac. 5 (1925); Keene Five Cent Sav. Bank v.

negotiability.[44] When the acceleration is at the uncontrolled option or caprice of the holder the strong current of authority is against the negotiability of the paper.[45] An accelerating event the happening of which rests with neither maker nor holder is more commonly found unobjectionble,[46] although there is authority to the contrary.[47]

When it is recalled that the primary reasons for time certainty in negotiable paper are the affording of data for valuation of the instrument in terms of money, the making of presentment and demand of payment at the right time, and the giving of proper notices to parties secondarily liable, all problems for the holder, it is astonishing that the type of acceleration provision causing

---

Reid, 123 Fed. 221 (C. C. A. 8th, 1903) ; Gillette v. Hodge, 170 Fed. 313 (C. C. A. 8th, 1909) ; Chicago R. Equipment Co. v. Bank, 136 U. S. 268, 284 (1889).

As to whether acceleration which is concluded to be optional requires presentment, see Griffin v. Reilly, 275 S. W. 242 (Tex. Civ. App. 1925) ; Hartge v. Capeloto, *supra*. As to what amounts to an election to mature the debt, see Harrison v. Beals, 111 Ore. 563, 222 Pac. 728 (1924) ; City Nat. Bank v. Pope, 260 S. W. 903 (Tex. Civ. App. 1924). An optional acceleration may be waived. California S. & L. Soc. v. Culver, 127 Cal. 107, 59 Pac. 292 (1899) ; McRae v. Federal Land Bank, 36 Ga. App. 51, 135 S. E. 112 (1926) ; see Console v. Torchinsky, 97 Conn. 353, 355, 116 Atl. 613 (1922). But if the acceleration is automatic, see Miles v. Hamilton, *supra*.

[44] Section 2-3 provides that an instrument calls for a sum certain within the meaning of the N. I. L. although it is to be paid : "By stated installments, with a provision that upon default in payment of any installment or of interest the whole shall become due." This section has nothing to do with the element of time certainty, but it sheds light upon the legislative intent as to the status of paper with acceleration provisions. Although in Iowa the words "or of interest" are omitted from the statute, it was held that a note payable in one amount at the due date, but providing for earlier maturity on default in payment of interest, was negotiable, such being the law merchant. Commercial Sav. Bank v. Schaffer, 190 Iowa 1088, 181 N. W. 492 (1921).

[45] See the cases cited *supra* notes 28 and 39.

[46] McCornick & Co. v. Gem State Oil & Products Co., *supra* note 33 ; Halstad State Bank v. Bilstad, 162 Iowa 433, 136 N. W. 204 (1912), modified, 144 N. W. 363 (1913), 49 L. R. A. (N. s.) 132 (1914) ; Bonart v. Rabito, *supra* note 18 ; Schmidt v. Regg, 172 Mich. 159, 137 N.W.524 (1912) ; Nickell v. Bradshaw, 94 Ore. 580, 183 Pac. 12 (1919), 11 A. L. R. 623 (1921). Among the more commonly cited cases to the same effect decided before the N. I. L. are Walker v. Woolen, 54 Ind. 164 (1876) ; Charlton v. Reed, 61 Iowa 166, 16 N. W. 64 (1883) ; Palmer v. Hummer, 10 Kan. 464 (1872) ; Ernst v. Steckman, 74 Pa. 13 (1873).

[47] Great Falls Nat. Bank v. Young, 67 Mont. 328, 215 Pac. 651 (1923). See also Alexander v. Thomas, 16 Q. B. 333 (1851), where an instrument calling for payment ninety days after sight "or when realized," was not a good bill even though interpreted as payable at all events at the end of the ninety days. The court emphasized the difficulty of the holder if he were to make presentment at the right time. Brooks v. Hargreaves, 21 Mich. 254 (1870), is similar, the promise being to pay in one year or whenever dividends on certain stock were declared.

*TIME CERTAINTY IN NEGOTIABLE PAPER*    **329**

least difficulty along these lines to him should be the one so generally condemned. In the instances in which the control of the accelerating event is in the maker there is normally some act or default on his part which almost necessarily becomes known to the holder; hence, while there may be difficulty in placing an accurate valuation upon the instrument, there is not likely to be any hardship so far as reasonable presentment and notice are concerned.

Why there should be so much objection to paper maturing at a fixed date or earlier at the uncontrolled option of the holder is difficult to understand. It must, of course, be granted that there is an uncertainty as to the maturity of such documents. But so there is in all demand instruments, and their negotiability is conceded. Why a note that is payable on demand for three years, for example, and then, if not earlier demanded, becomes due and payable according to its own terms, should not be classed as negotiable, while one payable at any time on demand is negotiable, has never been explained. The courts content themselves with repeating over and over again, in substance, that an acceleration provision which may operate at the whim or caprice [48] of the holder renders the instrument uncertain as to time of maturity. It is sometimes pointed out that in such instances the money is payable neither on demand nor at a fixed or determinable future time, as required by the first section of the *N. I. L.*,[49] and therefore cannot be negotiable. This means paying no attention whatever to Section 4-2, under which instruments payable "on or before a fixed or determinable future time" are clearly negotiable. If any paper with a fixed maturity and an acceleration provision is negotiable under the *N. I. L.*, it must be because it comes within the language just quoted. Certainly there is nothing therein indicating a differentiation between the various sorts of acceleration clauses. It may very reasonably be contended that

---

[48] If the objection is on the ground that the holder may oppress the maker by a capricious call for the money, it would seem that not merely negotiability but the very validity of the instrument would be endangered. Besides, in demand paper the danger of oppression is fully as great.

[49] See, for example, Kimpton v. Studebaker Bros. Co., *supra* note 32, at 559, 94 Pac. at 1041.

330   *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

if any are good, they all are; that is, of course, providing there is a date when the paper must certainly mature.

The very worst type of acceleration agreement would seem to be that dependent upon the happening or non-happening of a stated event not within the control of either maker or holder. For example, suppose a note were made payable at a fixed time or earlier "if ranch is sold or mortgaged," or "one year earlier if crop on designated land exceeds so many bushels per acre," or "to become at once due and payable if any attachment is levied" upon certain goods.[50] If maturity must involve "the performance of an act regularly incident to the collection of the paper," [51] then surely these decisions are wrong, and a few cases so hold.[52] It must be repeated, however, that there is nothing in the statute warranting any such line of distinction.

Determination of the money equivalent of paper of this last type is no more difficult or uncertain than in the case of instruments payable "on or before," at the maker's option. In neither case has the holder any control over the acceleration, and the chances of earlier payment or maturity are, as to him, wholly speculative. If, however, the holder must make presentment, demand, and give notice in accordance with such accelerated maturity, he does indeed have a difficult duty to perform.[53] The problem of the subsequent purchaser who claims to be a holder in due course, which means that he must have taken before maturity, is relatively simple. If he is ignorant of the happening of the accelerating event, the maturity may well be taken to be the fixed, ultimate date.[54] Of course there is the independent ques-

---

[50] See cases cited *supra* note 46.

[51] See Chafee, *supra* note 3, at 756, 773.

[52] See cases cited *supra* note 47. Cases *contra* are cited *supra* note 46.

[53] In Alexander v. Thomas, *supra* note 47, at 335, Lord Campbell said: "Even, however, if the other is the right meaning, namely, that the bill is payable sooner if the drawee should be sooner in funds, and, if not, at the end of ninety days at all events, I think this would not be a good bill; for the holder would have to watch and ascertain the precise time when the bill should become payable, and, if he failed in doing this and in duly presenting it, the drawer would be discharged. I am of opinion that this is not a good bill of exchange, drawn according to the custom of merchants, so as to relieve the plaintiff from the necessity of stating a consideration for it."

[54] Dunn v. O'Keefe, 5 M. & S. 282 (1816) ; Citizens' Nat. Bank v. Bank, 66 Colo. 426, 182 Pac. 12 (1919), 5 A. L. R. 587 (1920) ; see also N. I. L. § 117.

tion of the purchaser's good or bad faith, which may conceivably involve a consideration of a possible earlier dishonor of the instrument.

It is the status of the holder at the time of the accelerated maturity, then, that causes the real difficulty. If it is his duty to give notice forthwith to parties secondarily liable, at the peril of otherwise losing his hold upon them, he is in this respect, as a practical matter, almost helpless; that is, if, as is assumed, the acceleration operates automatically upon an event that would ordinarily be outside his observation. By Section 102 of the statute it is declared that: "Notice must be given as soon as the instrument is dishonored." It may be suggested with some reason that whether or not an instrument should rank as a bill or note should not turn upon even conceded difficulties of the holder, growing out of the statute of limitations or in preserving the financial backing of secondary parties. But it is submitted that it does not necessarily follow that such parties are discharged by the holder's failure to give notice promptly upon the accelerated maturity unless, indeed, he then knew, or, in the exercise of ordinary diligence and prudence, ought to have known of the dishonor. It is expressly provided [55] that: "Delay in giving notice of dishonor is excused when the delay is caused by circumstances beyond the control of the holder, and not imputable to his default, misconduct, or negligence." [56]

## MATURITY AT TIME CERTAIN TO COME

In an early English case [57] a promise to pay *A* or order, "six weeks after the death" of the promisor's father was held to be a negotiable note within the *Statute of Anne*, for, as it is reported, there was no contingency whereby the promise might never become payable; the only uncertainty was as to time, "which is the

---

[55] N. I. L. § 113.

[56] No case applying § 113 to this situation is known. As pointed out above, there are a considerable number of cases upholding the negotiability of paper such as that under consideration. It seems unlikely that, in the courts committed to that view, it would be held that the secondary parties were discharged by failure of the holder to give notice at once upon the happening of the accelerating event. It is believed that this result may properly be brought within § 113.

[57] Cooke v. Colehan, 2 Strange 1217 (1744).

332   *UNIVERSITY OF PENNSYLVANIA LAW REVIEW*

case of all bills payable at so many days after sight." At least partially under the influence of this case it was decided,[58] a few years later, that a promise to pay upon receipt of *A's* wages "due from his majesty's ship the Suffolk" was a negotiable note, since the receipt of the wages, if not absolutely certain to come sometime, as death is sure to come, was at least morally certain.[59] On the other hand, it was held that a promise to pay within so many days after the defendant should marry was not a negotiable note.[60] Although such paper calling for payment at a time certain to come, such as the death of the designated person, is open to all the objections raised against instruments payable at a fixed date with provision for acceleration upon the happening of an outside event, as pointed out above, and more,[61] nevertheless it is clear that Section 4-3 adopts the doctrine of the early cases first cited. Modern cases both before and after the statute follow this view.[62]

Death is probably the clearest possible example of an event that is certain to come sometime. The so-called "Southern War cases," involving promises to pay money at fixed periods after peace between the North and South, have been referred to as instances of like character, the obligations being said to be contingent

---

[58] Evans v. Underwood, 1 Wils. 262 (1749).

[59] In addition to Cooke v. Colehan, *supra* note 57, reliance was placed upon Andrews v. Franklin, 1 Strange 24 (1792), where the promise was to pay "two months after a certain ship of His Majesty's service should be paid off." In Joseph v. Catron, 13 N. M. 202, 81 Pac. 439 (1905), it was suggested that the two cases were quite different: whereas the paying off of a public ship may be highly certain there is no such certainty that a particular individual will receive his pay.

[60] Beardsley v. Baldwin, 2 Strange 1151 (1792).

[61] In acceleration paper there is at least an ultimate date of maturity that is fixed or determinable, according to which the positions of subsequent purchasers may be determined.

[62] McClenathan v. Davis, 243 Ill. 87, 90 N. E. 265 (1909), 27 L. R. A. (N. S.) 1017 (1910) ; Price v. Jones, 105 Ind. 543, 5 N. E. 683 (1886) ; Harper v. Davis, 115 Md. 349, 80 Atl. 1012 (1911), 35 L. R. A. (N. S.) 1026 (1912) ; Sheldon v. Blackman, 188 Wis. 4, 205 N. W. 486 (1925) ; Hegeman v. Moon, 131 N. Y. 462, 30 N. E. 487 (1892) ; *cf.* Kerr v. Smith, 142 N. Y. Supp. 57 (1913). In Zimmerman v. Zimmerman, 262 Pa. 540, 106 Atl. 198 (1919), an instrument in form a promissory note contained a promise to pay "one day after date . . . to be paid at my death." It was held not a good note because of uncertainty as to maturity. Under the circumstances it would probably not have been a sound construction that it was payable at the fixed date or earlier in case of death, although this might have saved the instrument as one with an acceleration provision.

upon an event which was morally certain to happen.[63] Those cases, however, are far from satisfactory authorities as to the status of the instruments, since most of the decisions did not depend upon there being promissory notes involved. There are many instances of promises or orders to pay upon or after events which were not certain to happen.

Instances of events not certain to happen, making orders and promises to pay at or with reference to such happenings non-negotiable, are of wide variety. The following provisions have been deemed to call for payment at a time fatally uncertain, so that the instruments are non-negotiable, or more accurately, not bills or notes:[64] "payed when we get it from the Brewery after date;"[65] "Due . . . when he is twenty-one years old;"[66] "Upon confirmation by the Congress of the United States of that certain land grant known . . .;"[67] "In the event this sale is not consummated . . . it (the promise) shall be null and void;"[68] "On settlement of William Dagel Estate after date," although by statute all final settlements of estates were required to be made within three years, unless otherwise ordered by court;[69] "On arrival at

---

[63] Joseph v. Catron, *supra* note 59, at 218. The court said: "In human experience no war has ever existed which has not come to an end, and none can be conceived of that will not have at some time a termination." On this basis a distinction might be drawn between a maturity depending upon the termination of a war and, on the other hand, one depending upon the signing of a treaty of peace.

[64] It is, of course, a requisite of any bill or note, whether negotiable or not, that it be payable at a time certain or on demand, etc. So commonly is the litigation settled by the conclusion that the paper in question is non-negotiable, that many requirements necessary to any bill or note are thought of as prerequisites to negotiability.

[65] Wray v. Miller, 120 N. Y. Supp. 787 (1910); Manhattan Co. v. Morgan, 242 N. Y. 38, 150 N. E. 594 (1926).

[66] Kelley v. Hemmingway, 13 Ill. 604 (1852). The court distinguished Goss v. Nelson, 1 Burr. 226 (1757), where an instrument was held to be a good note although payable to the infant payee "when he shall come of age," and specifying the time when that would be. Lord Mansfield evidently thought the promise was to pay on the specified date, the reference to the payee's then arriving at age being merely additional information.

[67] Joseph v. Catron, *supra* note 59. Confirmation was not even morally certain.

[68] State Bank v. Williams, 277 S. W. 773 (Tex. Civ. App. 1923), *rev'g*, 252 S. W. 222 (Tex. Civ. App. 1923); Bast v. Sproll, 176 Wis. 371, 187 N. W. 223 (1922).

[69] Scott v. Dagel, 200 Iowa 1090, 205 N. W. 859 (1925).

port of destination;" [70] "When a dividend shall be declared;" [71] "This note is payable when Post Office Department accepts my building from me;" [72] "Payable when plastering is done;" [73] "When that section of the road is built which lies between" two stated points.[74]

In an Iowa case,[75] although the point seems not to be necessarily involved, the court treats an instrument in form a promissory note, payable "when the present indebtedness of Highland Park Company is paid," to be a note, due after a reasonable time for payment of the debts.[76] Paper payable when convenient, when able, etc., ought not to rank as bills or notes,[77] however enforceable such promises may be as contracts.

## HAPPENING OF CONTINGENCY

The concluding sentence of the fourth section, "An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect," is susceptible of a possible meaning, standing by itself, that would render non-negotiable all paper with acceleration provisions. The happening of the accelerating event, whether maturity follows automatically or only upon the exercise of an option, matures the in-

---

[70] The Lykus, 36 Fed. 919 (S. D. N. Y. 1888) ; *cf.* Randall v. Johnson, 59 Miss. 317 (1881).

[71] Brooks v. Hargreaves, 21 Mich. 254 (1870).

[72] Devine v. Price, 152 N. Y. Supp. 321 (1915).

[73] Smith v. Hurlburt Co., 93 Conn. 391, 106 Atl. 319 (1919).

[74] Illinois Midland Ry. v. Bank, 200 Ill. App. 591 (1916) ; *cf.* Stevens v. Blunt, 7 Mass. 240 (1810) ; Crawford v. Johnson, 87 Mo. App. 478 (1901).

[75] Dille v. Longwell, 188 Iowa 606, 176 N. W. 619 (1920).

[76] The case is properly criticised in (1920) 5 IOWA L. BULL. 266. See also (1920) 18 MICH. L. REV. 696. The court relied upon Kiskadden v. Allen, 7 Colo. 206, 3 Pac. 221 (1883) ; Dobbins v. Oberman, 17 Neb. 163, 22 N. W. 356 (1885) ; Sears v. Wright, 24 Me. 278 (1844) ; Crooker v. Holmes, 65 Me. 195 (1875) ; Stevens v. Blunt, 7 Mass. 240 (1810) ; Cota v. Buck, 48 Mass. 588 (1844) ; Page v. Cook, 164 Mass. 116, 41 N. E. 115 (1895) ; Pistel v. Ins. Co., 88 Md. 552, 42 Atl. 210 (1898) ; Randall v. Johnson, 59 Miss. 317 (1881) ; Ubsdell v. Cunningham, 22 Mo. 124 (1855) ; Lewis v. Tipton, 10 Ohio St. 88 (1859) ; Benton v. Benton, 78 Kan. 366, 97 Pac. 378 (1908) ; Goodloe v. Taylor, 3 Hawks 458 (N. C. 1825) ; Smithers v. Junker, 41 Fed. 101 (C. C. N. D. Ill. 1889) ; Nunez v. Dautel, 86 U. S. 560 (1873). Most of these cases do not necessarily decide that the instrument was a note.

[77] Humphrey v. Beckwith, 48 Mich. 151 (1882) ; *Ex parte* Tootell, 4 Ves. Jr. 372 (1798).

strument in a sense upon a contingency. It must be perfectly
clear that it could not have been intended by this concluding sen-
tence to make objectionable those provisions permitted by the
preceding subdivisions. Its fair meaning would seem to be that
paper whose only maturity is dependent upon a contingency which
may or may not happen is non-negotiable.[78] Instruments are ne-
gotiable or not according to their status at the time of issuance [79]
and the later happening of the event has no more effect in render-
ing the instrument negotiable, because the uncertainty as to ulti-
mate maturity is then removed, than the satisfaction of the con-
dition in a conditional promise or order has upon the standing
of a document which is non-negotiable because the promise or
order is not absolute in its terms.

---

[78] Bonart v. Rabito, *supra* note 18.

[79] No instrument is negotiable that was not so when issued. It does not
follow from this, however, that once negotiable always negotiable. A restric-
tive indorsement, for example, converts a negotiable paper into one non-
negotiable.

8. Defendant's allegations that the loan is in default is not true. The contracts in the origination of the loan are misleading with false representations to induce consumers into loans, when the amortization is more than presented in the initial loan documents. This is an action of legal standing issue by an alleged creditor(s) for a secured debt, which is not in default. Plaintiff is making continuing monthly payments to secured successor of initial creditor, which is accepting the monthly payments.

9. Debtor, as a Grantor becomes only liable for the debt if the borrower is defaulting in its payments. Borrower is not in default and is not a part of this bankruptcy, but there are legal issues relating the deceptive predatory contracts signed with the original lender, which successor does not want to resolve.

10. The Amortization Schedule finishes in 2012 and therefore, the Successor should have made another Amortization Schedule to Borrower. The Bank failed to do so, as well as to correct contractual misunderstandings between the party's with modified agreements and settlements to prevail this situation now in bankruptcy. Wells Fargo's selfish acts hurts consumers in United States not informing consumers of the contractual defects and make the necessary steps to prevail collection and foreclosures.

11. Mr. Ford may be working and officer of the bank, but he is also an officer employee of the Management Group. Mr. Ford must decide for whom he is working and in which capacity.

12. The Maturity Date is in question because of the failed concise and contradicting terms of the contracts. The Mortgage does not state any Maturity Date, the Promissory Note an original given by the Title Company at the Closing states a Maturity Date December 18, 2014, a filed copy of a Promissory Note filed in 2018 by Wells Fargo Bank, N.A. with the Proof of Claim shows a Maturity Date of December 18, 2017 (the number 7 was altered from the number 4) and the Amortization Schedule finishes in 2012. Further, the origination bank's supporting documents shows clearly that the loan is based on a 20 Year Amortization loan and the loan terms contradicts the first part of the statement with:

**REPAYMENT TERMS:**

This Note shall be due and payable in principal payments based a 20 year mortgage style amortization plus accrued interest thereon on the date each principal payment is due. All remaining principal and interest shall be due and payable 120 months from closing.

The bank wants to be paid within 120 months which is 10 Years and the amortization is for a 20 Year loan, but it should have been for 10 years with higher monthly mortgage payments, but the monthly mortgage payments were realistically were based on a 20-year loan not 10-year loan. Now the bank without any written maturity date in the note and mortgage fails to support other contradicting supporting documents.

13. Debtor/Plaintiff is accusing the Bank for unjust enrichment from those loans to consumers and false misleading altered Promissory Note filed with the US Bankruptcy Court showing a different Date of the Maturity Date than the Original.

14. If a maturity Date becomes uncertain ab initio of a Promissory Note, then the Instrument becomes useless void and/or unnegotiable. There are many uncertainties as explained above and in many pleadings. The bank created uncertainties of the Maturity Date with the intentions to "illegally foreclose or other remedies", in which the bank and others profited unjustly and enriched the bank and their officers from debts falsely created through contracts with their Scheme.

15. The Defendants Memorandum is meritless, because it does not refer to the issues in the 2nd complaint, rather the Defendant believes to be entitled for relief based on a previous partial issue in their filed Proof of Claim instigating because of the Dismissal and in Appeal of the first complaint of administrative issues they are entitled to suppress Plaintiff to challenge the Promissory Note. The 2nd complaint is primarily to void the defective Promissory Note and secondly to strike the Proof of Claim, because without the Note all other Instruments are useless pursuant to the Supreme Court Decision Carpenter v. Logan, 83 U.S. 271 (1872), which orders all lower courts that the Mortgage follows the Note and that the Mortgage alone is not enough for enforcement.

16. Furthermore, the Promissory Note state that the "Borrower promises to pay", but it fails to state that the "Borrower promises unconditionally to pay". This is the seventh requirement to exclude uncertainty. Original Lender failed to comply and successor Wells

Fargo Bank, N.A. failed to correct and change or substitute the Instrument (Promissory Note).

17. Appellant attached a true copy of the Promissory Note, Wachovia Docs Guaranty Agreement and other Docs relating to guaranty, uncertainty etc.

Therefore, I ask this Court to **deny** Defendant's pleadings, Notice of Motion to Dismiss the 2nd Complaint and Order Discovery in this Matter to establish legal standing to file pleadings or collect on a Debt.

Dated: January 21, 2019

Robert W. Knaak

**CERTIFICATION OF MAILING**

I Robert W. Knaak mailed on January 22, 2019 by USPS the foregoing Reply to the Response of Mr. Ford to: Greenbaum Rowe Smith & Davis, LLP., 99 Wood Avenue South, Iselin, New Jersey, 08330-2712

Dated: January 21, 2019

Robert W. Knaak